## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| KELLY ARGYRIOU, | ) | Case No. 4:19-cv-1878 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID A. FLYNN, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Kelly Argyriou performed well for several years as the finance director for Defendant David A. Flynn at the central office of his eponymous company, Defendant David A. Flynn, Inc., which owns and operates several car dealerships. She sought and secured a promotion to serve as the general manager at one of them. Within a few weeks, Mr. Flynn terminated her.  Ms. Argyriou filed suit alleging sex discrimination in violation of federal and State law.  She also filed a claim under Ohio's whistleblower statute.

Defendants seek a summary judgment (ECF No. 29), which prompted Plaintiff to object to certain evidence on which Defendants rely in their motion.  (ECF No. 38.) Plaintiff also moves to strike what she characterizes as a "defense" Defendants discuss in their reply brief.  (ECF No. 45.)  On February 18, 2021, the Court held oral argument on the record on the pending motions.  For the reasons that follow, the Court **OVERRULES** Plaintiff's objections and **DENIES** Plaintiff's motion to strike.

As for summary judgment, the Court concludes that Defendants are entitled to a judgment as a matter of law on Plaintiff's whistleblower claim. Beyond that, this case presents a close call. Defendants marshal compelling evidence that Plaintiff's termination did not amount to unlawful sex discrimination. A jury may well so find. It may even likely do so. But that is not a question for the Court. In the current procedural posture, construing the evidence in favor of Plaintiff, the Court concludes that a reasonable jury could return a verdict for Plaintiff. She has identified disputed material facts that are not so one sided as to entitle Defendants to judgment as a matter of law. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment.

## STATEMENT OF FACTS

David A. Flynn, Inc. ("Flynn Inc.") operates five car dealerships in Columbia County, Ohio, including Donnell Ford-Lincoln in Salem and Donnell Ford in Boardman. (ECF No. 22, ¶ 1, PageID #233.) Defendant David Flynn is the president and owner of Flynn Inc. (*Id.*, ¶ 2, PageID #233.)

### A.     Mr. Flynn Hires Ms. Argyriou as Finance Director

Plaintiff Kelly Argyriou was recruited to work for Flynn Inc. in February 2014 as its finance director. (*Id.*, ¶¶ 3–5; ECF No. 32, PageID #777.) In this newly created role, she reported directly to Mr. Flynn and oversaw the finance directors of six dealerships his company operated. (ECF No. 22, ¶ 4, PageID #233; ECF No. 32, PageID #778.) In this position, Flynn Inc. paid Ms. Argyriou $300,000 per year plus benefits, including free fuel and the use of a demonstration car. (ECF No. 22, ¶ 6, PageID #233.)

2

Within two or three months of starting as Flynn Inc.'s finance director, Ms. Argyriou contributed to improved profitability at the company, and her suggestions for new systems to increase dealership sales yielded results.  (ECF No. 28, PageID #657–58.)  Ms. Argyriou continued in this role for just over four years.  (ECF No. 22, ¶ 13, PageID #234.)  While she enjoyed that role, Ms. Argyriou aspired to be the general manager of a dealership because she considered it a steppingstone to becoming the company's director of operations.  (ECF No. 32, PageID #789.)  She discussed this often with Mr. Flynn.  (*Id.*)

### B.  Mr. Flynn Promotes Ms. Argyriou to General Manager

When the general manager position at Donnell Ford-Lincoln in Salem, Ohio became available in June 2018, Ms. Argyriou asked Mr. Flynn for the job.  (ECF No. 22, ¶¶ 7–10, PageID #233–34.)  Although Ms. Argyriou wanted the position, she did not want to take a pay cut, so she negotiated with Mr. Flynn that she would do both jobs—finance director and general manager—for the finance director salary plus a commission from the general manager job based on the dealership's net profit.  (*Id.*, ¶¶ 11–12, PageID #234; ECF No. 32, PageID #790.)  Mr. Flynn and Ms. Argyriou agreed to this arrangement for 90 to 120 days to allow her time to get "everything worked out."  (ECF No. 32, PageID #790.)  Ms. Argyriou estimated it might take six to nine months to get the Salem Dealership "on track."  (*Id.*)

Ms. Argyriou took over as general manager at the Salem dealership on June 16, 2018, performing her duties as finance director at the same time.  (ECF No. 22, ¶ 13, PageID #234.)  When Ms. Argyriou began as general manager, the situation she inherited at the Salem dealership was worse than Todd Dauterman, the

3

former general manager, led her to believe. (ECF No. 32, PageID #791–92.)
Ms. Argyriou recalled that the used car inventory was "in pretty bad shape," the used
cars "were not cleaned up," and the way the previous general managers handled
manufacturer incentives caused balance sheet problems. (*Id.*) Ms. Argyriou began
to remedy these issues, but doing so made her unpopular, "stuck in the middle"
between what Mr. Flynn expected of her and what she could get the sales and service
team members at the dealership to do. (*Id.*, PageID #792–93.)

Plaintiff's actions rubbed some long-time employees the wrong way. (*Id.*)
Mr. Flynn received several complaints about Ms. Argyriou from employees at the
dealership. (ECF No. 28, PageID #682.)  But he stuck up for Ms. Argyriou, telling
those employees that his general manager was "there to help," that they had "to listen
to her," that if they did they would "see an increase on [their] paycheck," and he
attempted to get them to "buy in" to her leadership. (*Id.*)

In the week leading up to Ms. Argyriou's termination, Tiffany Shaffer, who
worked at the Flynn Inc.'s central business office overseeing dealership support,
received a phone call from Ray Wilkins, the manager of the service department at the
Salem dealership at the time. (ECF No. 26, PageID #414.)  Shaffer testified that
Wilkins was upset with Ms. Argyriou. (*Id.*, PageID #414–15.)  As with any employee
who called her to complain about a general manager, Shaffer often could not do much
about it and told the employee to call Mr. Flynn directly. (*Id.*)  Based on this call and
others, on Friday, August 3, 2018, Shaffer advised Mr. Flynn about growing

displeasure with Ms. Argyriou's leadership at the dealership.  (ECF No. 28, PageID #693.)

### C.    Mr. Flynn Fires Ms. Argyriou

On that same day, Friday, August 3, 2018, some six weeks after Ms. Argyriou began as general manager, a mechanic at the Salem dealership called Mr. Flynn and threatened that all the mechanics were going to stage a walkout the following Monday.  (ECF No. 28, PageID #683.)  He added that the sales staff was prepared to do the same.  (*Id.*)  What happened next is a matter of some dispute.  Mr. Flynn says that, after he hung up with the mechanic, he called Wilkins who confirmed there was going to be a walkout because the staff was upset with Ms. Argyriou over remarks she made at a service meeting.  (*Id.*)  Reportedly, employees at the dealership were upset that Ms. Argyriou said she was there to fix problems, not make friends.  (*Id.*)  Mr. Flynn maintains Wilkins indicated there was no stopping the walkout.  (*Id.*)

Wilkins remembers his conversation with Mr. Flynn differently.  According to his testimony, Wilkins did not believe there would be a walk out, and he could not get Mr. Flynn to tell him his source:

> [Mr. Flynn] called me and said that he received a phone call from a mechanic, a technician, that they were all going to walk out unless a change was made up front.  And I proceeded to tell him that—asked him who that was because, like I said, I'd been with that shop for 15 years and he would not tell me who that was.
>
> So I proceeded to tell him I did not believe that was true.  That whoever told him that—he said he received a phone call directly.  I tried to find out who that was.  He said he wouldn't tell me because he promised he wouldn't tell that person.  I believe that not to be true.  I think that was made up.  That is just my honest opinion.

(ECF No. 23, PageID #339.)

5

Either way, Mr. Flynn decided that night or early the next morning that he had "no choice" but to fire Ms. Argyriou. (ECF No. 28, PageID #684.) On Saturday morning, Mr. Flynn drove to the Salem dealership and summoned Ms. Argyriou into a vacant office, intent on firing her. (*Id*.) She asked for an "opportunity to straighten it out," but Mr. Flynn told her "he had no choice," that she "was done," and the "experiment was over." (*Id*., PageID #686.) Mr. Flynn then dismissed Ms. Argyriou from both the finance director and general manager positions. (*Id*.; ECF No. 22, ¶ 14, PageID #234.) At oral argument, the parties agreed that a man replaced Ms. Argyriou as general manager. No one replaced her as finance director. (ECF No. 28, PageID #655.)

### D.    Work Environment at Flynn Inc. and Its Dealerships

Ms. Argyriou's employment at Flynn Inc. takes place against the backdrop of what she characterizes as, at a minimum, an unwelcoming workplace. Plaintiff presents evidence that Mr. Flynn did not believe women belonged as general managers, which he described as "a man's job." (ECF No. 35, PageID #969; *see also id.*, PageID #963.) Also, she adduced evidence that Mr. Flynn said, perhaps while discussing Ms. Argyriou, "he wouldn't put a female into a general manager position because they wouldn't be able to do it." (ECF No. 34, PageID #935.)

Additionally, one employee testified that "[Mr. Flynn] would state that the finance girls could prop their big tits on a desk and ask any questions" and that he would "kiss[] on the mouth and hug[] finance managers." (ECF No. 36, PageID #985.) Mr. Flynn also referred to a different female employee as "the girl" and "a dyke" on several occasions. (*Id*.) Referring to that same employee, a witness recalls Mr. Flynn

6

saying she "was more like a guy because she was a lesbian." (*Id.*)  Another employee described Mr. Flynn as "a womanizer" and said that he would make "uncomfortable" comments in the workplace.  (ECF No. 34, PageID #944.)

Employees also recall that Mr. Flynn made comments about Ms. Argyriou specifically.  They recall him saying, among other things, "Jesus, look at the hair. What the hell?  It doesn't even look like she runs a comb through it, but at least she has a nice ass."  (ECF No. 36, PageID #986, #979.)  Mr. Flynn also described Ms. Argyriou as the "smartest girl in the car business," a "woman in a man's world," and a "woman in a man's body."  (ECF No. 36, PageID #987; ECF No. 35, PageID #968; ECF No. 32, PageID #816.)  The Court does not include this testimony here gratuitously, but because it figures into the analysis of the parties' positions on summary judgment.

## STATEMENT OF THE CASE

A few months after her termination, Plaintiff filed a complaint in State court against Flynn Inc. and Mr. Flynn.  (ECF No. 1-1.)  In an amended complaint, Plaintiff asserts claims for sex discrimination in violation of 42 U.S.C. § 2000e-2(b) and its cognate provision of State law, Section 4112.02 of the Ohio Revised Code, against Flynn, Inc. plus an additional claim under Section 4112.02(J) of the Ohio Revised Code against Mr. Flynn individually (Count 1), and for termination in violation of Ohio's whistleblower protections in Section 4113.52 (Count 2).  (ECF No. 1-1, PageID #9–10.) After timely removal (*id.*, PageID #1–3), Flynn Inc. counterclaimed for unjust enrichment (ECF No. 4, PageID #132), but later amended that pleading, omitting the counterclaim (ECF No. 8).

7

Defendants move for summary judgment on each of Plaintiff's claims, including those asserted against Mr. Flynn individually.  ([ECF No. 29](#).)  Plaintiff opposes ([ECF No. 40)](#), objects to certain evidence ([ECF No. 38)](#), and moves to strike the honest-belief argument Defendants raise in reply ([ECF No. 45)](#).

## ANALYSIS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the Court must view evidence in the light most favorable to the non-moving party.  *Kirilenko-Ison v. Board of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

On a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the claim or defense at issue.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n.12 (6th Cir. 1989); *Chappell v. City of Cleveland*, 584 F. Supp. 2d 974, 988 (N.D. Ohio 2008).  After discovery, summary judgment is appropriate if the nonmoving party fails to establish "an element essential to that party's case and upon which that party will bear the burden of proof at trial."  *Tokmenko v. MetroHealth Sys.*, ___ F. Supp. 3d ____, 2020 WL 5629093, at *2 (N.D. Ohio Sept. 21, 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"The party seeking summary judgment has the initial burden of informing the court of the basis for its motion" and identifying the portions of the record "which it

believes demonstrate the absence of a genuine issue of material fact." *Id.* (citing *Celotex Corp.*, 477 U.S. at 322). Then, the nonmoving party must "set forth specific facts showing there is a genuine issue for trial." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986)). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

If a genuine dispute exists, meaning "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is not appropriate. *Id.* However, if "the evidence is merely colorable or is not significantly probative," summary judgment for the movant is proper. *Id.* The "mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–48). To determine whether a genuine dispute about material facts exists, it is not the Court's duty to search the record; instead, the parties must bring those facts to the Court's attention. *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). Ultimately, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251.

## I.    Plaintiff's Objections to Evidence on Summary Judgment

On summary judgment, the central inquiry "determin[es] whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be

resolved in favor of either party." *Id.* at 250.  Generally, a district court "will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter." *Kermavner v. Wyla, Inc.*, 250 F. Supp. 3d 325, 329 (N.D. Ohio 2017) (citing *Anderson*, 477 U.S. at 249).  A district court only examines "disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248.  "It is well settled that only admissible evidence may be considered by the trial court ruling on a motion for summary judgment." *Wiley v. United States*, 20 F.3d 222, 225–26 (6th Cir. 1994).  As relevant here, "hearsay evidence cannot be considered on a motion for summary judgment." *Wiley*, 20 F.3d at 225–26; *see also* Fed. R. Civ. P. 56(c)(4) (relating to affidavits).

Plaintiff objects to several pieces of evidence on which she argues Defendants impermissibly rely in support of summary judgment.  (ECF No. 38, PageID #1020–25.)  This evidence includes deposition testimony by Tiffany Shaffer, Judi Dunlop, Ray Wilkins, and Mr. Flynn, which Plaintiff seeks to preclude the Court from considering.  (*Id.*, PageID #1020.)  The Court considers each objection in turn.

### I.A.1. Tiffany Shaffer

Plaintiff objects to Shaffer's testimony relating to Todd Dauterman, who preceded Ms. Argyriou as general manager at the Salem dealership.  Shaffer worked at the dealership's central business office.  (ECF No. 26, PageID #414.)  In her testimony, she contrasted Ms. Argyriou's management style with Dauterman's in ways that reflected poorly on the former.  (*Id.*, PageID #416.)  Plaintiff objects that Shaffer lacks first-hand knowledge for her testimony, making it improper under Rule 56.  But Shaffer testified based on her experience and knowledge as an employee

at the dealership and her perception about Dauterman's managerial style and how it may have contrasted with Ms. Argyriou's.  (*Id.*)  Therefore, the Court overrules this objection.

Further, Plaintiff objects to Shaffer's testimony about "what Ray Wilkins said to her in a phone call."  (ECF No. 38, PageID #1022.)  In that conversation, which she relayed to Mr. Flynn, Shaffer testified that Ms. Argyriou made no effort to get know technicians and parts personnel.  (ECF No. 26, PageID #415.)  Similarly, Plaintiff objects to testimony that Shaffer related to Mr. Flynn concerns Dauterman expressed to her about Ms. Argyriou's performance.  (ECF No. 38, PageID #1022; ECF No. 26, PageID #416.)  Plaintiff argues these conversations constitute double hearsay, or hearsay on hearsay, that the Court may not consider.  (*Id.*)  But this testimony is not offered for the truth of the matter asserted, that Ms. Argyriou was a poor general manager.  Instead, each exchange goes to Mr. Flynn's state of mind when he made the decision to terminate Ms. Argyriou.  Therefore, this testimony does not constitute hearsay, and the Court overrules this objection.

### I.A.2. Judi Dunlop

Plaintiff objects to Judi Dunlop's testimony regarding Dauterman's "management skills" because she "lacks first-hand knowledge of Dauterman's management style."  (ECF No. 38, PageID #1023.)  Dunlop worked as a finance manager at Flynn Auto Companies.  (ECF No. 24, PageID #364.)  There, she worked from time to time with Dauterman when he served as general manager at the Salem dealership.  (*Id.*, PageID #371.)  As is the case with her similar objection to Shaffer's testimony, Dunlop testified based on her perception of Dauterman and his

management style.  Because Dunlop testified based on her first-hand knowledge, the Court overrules this objection.

### I.A.3. Ray Wilkins

Plaintiff objects to the deposition testimony of Ray Wilkins regarding two phone calls he received from Mr. Flynn, one the day before Ms. Argyriou's termination and another the morning of it.  (ECF No. 38, PageID #1024.)  She argues what Mr. Flynn told Wilkins on that call is inadmissible hearsay because the conversation relayed what a mechanic told Wilkins, who then relayed the conversation to Mr. Flynn.  (*Id.*; *see also* ECF No. 23, PageID #343–44.)

To be sure, if Defendants presented Wilkins's testimony for the truth of the matter asserted—that the employee walk-out were going to occur as a result of Ms. Argyriou's poor management—that may well be precluded.  On the facts presented, however, the testimony goes to what Mr. Flynn knew or did not know and what he did in response before terminating Ms. Argyriou.  For that reason, this testimony does not run afoul of the hearsay rules, and the Court overrules this objection as well.

### I.A.4. Mr. Flynn

Finally, Plaintiff objects to Mr. Flynn's testimony about what the unnamed mechanic told him about the employee walkout.  Specifically, she argues Mr. Flynn "received a phone call from a mechanic stating that the Salem store employees were walking out unless a change upfront was made." (ECF No. 38, PageID #1024; *see also* ECF No. 28, PageID #683.)  What any mechanic specifically told Mr. Flynn does not particularly matter for the dispute between the parties.  What does matter is what

may have motivated Mr. Flynn's decision to terminate Ms. Argyriou.  As with the other evidence that is the subject of Plaintiff's motion, the Court overrules the objection for the same general reasons.

*    *    *

For the foregoing reasons, the Court overrules each of Plaintiff's objections to the evidence Defendants submitted in support of their motion for summary judgment and denies her motion to strike evidence from the summary judgment record.  (ECF No. 38.)

## II.    Plaintiff's Motion to Strike Defendants' Argument Based on the Honest-Belief Rule

Plaintiff moves to strike Defendants' reliance on the honest-belief rule on the ground it was raised for the first time in reply.  (ECF No. 45, PageID #1152.)  In support, she cites a footnote in *Jenkins v. Rock Hill Local School District*, 513 F.3d 580, 584 n.4 (6th Cir. 2008), which recognizes that "claims . . . not mentioned in [the] original brief . . . are therefore waived."  *Jenkins* in turn relies on *United States v. Campbell,* 279 F.3d 392, 401 (6th Cir. 2002) (emphasis added), for the proposition that an "appellant cannot raise new *issues* in a reply brief; he can only respond to arguments raised for the first time in appellee's brief."

"[F]or all practical purposes," an issue raised in reply is "the same is if it had not been raised at all as a basis for summary judgment."  *McGruder v. Metropolitan Gov't of Nashville & Davidson Cnty.*, No. 3:17-cv-1547, 2020 WL 4586171, at *3 (M.D. Tenn. Aug. 10, 2020).  While "a district court nonetheless has the discretion to consider an issue raised in a reply brief, or new evidence submitted with a reply, it

13

must give the opposing party a reasonable opportunity to respond to the new argument or evidence. Failure to do so is an abuse of discretion." *Id.* at *2 (citing *Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 481–82 (6th Cir. 2003)).

To refute a defendant's proffered reason for an adverse employment action as pretextual, a plaintiff may show that those explanations "(1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012) (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). Under the law of this Circuit, a defendant's honest-belief is bound up with the plaintiff's burden to show pretext. *See, e.g.*, *Gordon v. Traverse City Area Pub. Schs.*, 686 F. App'x 315, 322 (6th Cir. 2017) (citing *Joostberns v. United Parcel Servs.*, 166 F. App'x 783, 791 (6th Cir. 2006)). In other words, while a plaintiff may attempt to show a defendant's proffered explanations amount to a pretext for unlawful discrimination, the defendant can try to show that it had a good-faith belief in the factual basis for the explanation at issue.

In this way, the honest-belief rule allows an employer, when faced with an employment discrimination claim, to rebut an argument of pretext by showing the defendant honestly believed the explanation given, even if that explanation turns out to be untrue. "[A]s long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is shown to be incorrect."

14

*Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 806–07 (6th Cir. 1998)).

Against this backdrop, Plaintiff knew or should have anticipated that Defendants would advance an argument in reply based on the honest-belief rule. Accordingly, the Court will not strike the argument.  Moreover, Plaintiff has had ample opportunity, both at oral argument and in discovery, as the record makes clear, to address the issues bound up with the argument.

## III.    Motion for Summary Judgment

Defendants move for summary judgment on all of Plaintiff's claims, including her causes of action for sex discrimination under Title VII and State law and that Flynn Inc. violated Ohio's whistleblower statute.

### III.A. Plaintiff's Whistleblower Claim

"The Ohio Whistleblower Act prohibits an employer from retaliating against an employee who reports the employer's wrongdoing."  *Avery v. Joint Twp. Dist. Mem'l Hosp.*, 286 F. App'x 256, 261 (6th Cir. 2008) (citing Ohio Rev. Code § 4113.52). If an employee becomes aware of a violation of State or federal law that constitutes a felony criminal offense, then the employee must notify her employer orally and in writing. Ohio Rev. Code § 4113.52(A)(1) & (3).  No employer may take any retaliatory action against an employee who makes a report under this statute.  *Id.* § 4113.52(B).

"Ohio courts have interpreted the public policy expressed by the Whistleblower Act narrowly," requiring that employees comply with the statute's reporting and procedural requirements before they are permitted to make a wrongful termination claim under the statute.  *See id.* (discussing *Contreras v. Ferro Corp.*, 73 Ohio St. 3d

244, 251, 652 N.E.2d 940, 946 (1995)).  To establish a violation, a "plaintiff must first make a prima facie case by showing that 1) [she] engaged in activity which would bring [her] under the protection of the statute, 2) was subject to an adverse employment action, and 3) there was a causal link between the protected activity and the adverse employment action." *Klepsky v. United Parcel Serv., Inc.*, 489 F.3d 264, 271 (6th Cir. 2007) (citing *Wood v. Dorcas*, 142 Ohio App. 3d 783, 792, 757 N.E.2d 17, 23 (6th Dist. 2001)).

Plaintiff maintains she uncovered an accounting practice that allegedly violated Ohio tax law and then raised the issue with Mr. Flynn and other managers. (ECF No. 40, PageID #1104; ECF No. 32, PageID #806–08.)  When the practice continued, she prepared a memo for Mr. Flynn, the chief financial officer, general managers, and finance staff regarding the proper way to handle the transactions at issue.  (ECF No. 39, ¶ 26, PageID #1028–29; ECF No. 39-6, PageID #1082.)

Additionally, Ms. Argyriou claims she made written reports to Mr. Flynn about inflated monthly dealership expenses.  (ECF No. 40, PageID #1105–06; ECF No. 39, ¶ 6, PageID #1026.)  These reports consisted of four monthly dealership expense reports showing significantly increased expenses.  (ECF No. 40, PageID #1105–06; ECF No. 39, ¶¶ 21 & 22, PageID #1028.)  Plaintiff maintains these inflated expenses amounted to fraud because they affected the compensation of general managers.  (*Id.*, ¶ 24.)  She argues these reports satisfy the statutory reporting requirements.

16

Plaintiff's whistleblower claim suffers from three separate flaws.

### III.A.1. Written Report

Defendants argue that the record fails to show the underlying conduct on which Plaintiff bases her claim are felonies, as required under Section 4113.52(A)(1) and (3).  The Court agrees.  Although Plaintiff points to generalized complaints of violations of Ohio tax law, the supporting documents on she relies on to invoke statutory protection make no such claim.  (*See* ECF No. 39-6, PageID #1082.)  To the contrary, Ms. Argyriou describes a technical method to ensure proper calculation of State taxes in Flynn Inc.'s computer systems.  At most, not using the method she suggests may be less convenient or more prone to error, but that is a far cry from rising to the level of tax fraud.

With respect to inflated expenses, Plaintiff fails to show—now or at the time she raised the issue with Mr. Flynn—she identified unlawful conduct the statute covers.  Again, the reports on which Plaintiff relies are four monthly dealership expense reports.  (ECF No. 40, PageID #1105–06; ECF No. 39, ¶¶ 21 & 22, PageID #1028.)  But nothing on the face of these expense reports describes unlawful conduct, let alone a felony.

Ohio's whistleblower statute requires "a written report that provides sufficient detail to identify and describe the violation."  Ohio Rev. Code § 4113.52(A)(1) & (3). Without such detail, an employer cannot know whether the conduct an employee flags falls within the statute.  Plaintiff has not carried her burden of pointing to evidence in the record establishing that the underlying conduct at issue involves felonies or that she identified the conduct as felonies.

17

### III.A.2. Procedural Reporting Requirements

Nor did Ms. Argyriou follow the statutory procedures for reporting the underlying conduct on which she bases her whistleblower claim. Under the statute, an employee "shall file with [the employee's supervisor or other responsible officer of the employee's employer] a written report that provides sufficient detail to identify and describe the violation." Ohio Rev. Code § 4113.52(A)(1) & (3). To invoke the protections of the statute, the Ohio Supreme Court demands strict compliance. *Contreras*, 73 Ohio St. 3d 244, 652 N.E.2d 940, syllabus.

The record shows that Ms. Argyriou did not comply with this statutory requirement. With respect to the tax issue, Ms. Argyriou's email addressed methodology for ensuring proper calculation of tax credits. As noted above, without more, this email does not fulfill the reporting requirement. Nor does relying on four preexisting dealership expense reports, none of which Ms. Argyriou authored. Simply providing documents to one's employer, without more, does not constitute a report under the statute or trigger its protections, at least not on this record. Ms. Argyriou's failure to comply with the statutory reporting requirement entitles Defendants to judgment as a matter of law.

### III.A.3. Causation

Even if Ms. Argyriou strictly complied with the statutory requirements, her whistleblower claim fails for an additional reason. Ohio law requires a causal link between the protected activity and the adverse employment action. *Klepsky*, 489 F.3d at 271 (quoting *Wood*, 142 Ohio App. 3d at 792, 757 N.E.2d at 23). So far as the Court can tell, the record contains not a scintilla of evidence that Defendants took any

18

adverse employment action against Ms. Argyriou because she internally reported the underlying conduct at issue.  Without evidence tying her termination to her reports of alleged felonies, even assuming they were felonies and properly reported under the statute's procedures, she cannot proceed on this claim.

*     *     *

Based on the record, Plaintiff cannot establish that the statute offers her any protection, procedurally or substantively.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's whistleblower protection claim.

### III.B  Sex Discrimination

Plaintiff asserts sex discrimination claims under Title VII and Chapter 4112 of the Ohio Revised Code.  "Ohio courts apply federal case law interpreting Title VII of the Civil Rights Act of 1964 to claims arising under R.C. Chapter 4112 to the extent that the terms of the statutes are consistent."  *Flagg v. Staples the Office Superstore E., Inc.*, 138 F. Supp. 3d 908, 915 (N.D. Ohio 2015) (quoting *Birch v. Cuyahoga Cnty. Prob. Ct.*, 173 Ohio App. 3d 696, 2007-Ohio-6189, 880 N.E.2d 132, ¶ 20 (8th Dist.)).  For purposes of the sex discrimination claim against Flynn Inc., federal and State law are consistent.

On the issue of individual liability, however, Title VII and State law diverge. "The definition of employer in § 4112.01(A)(2) includes 'any person acting directly or indirectly in the interest of an employer,' and the Ohio Supreme Court has held that individual supervisors and managers can be held jointly liable with their employer, *as employers themselves*, for their own acts of discrimination.  *Shoemaker-Stephen v. Montgomery Cnty. Bd. of Com'rs*, 262 F. Supp. 2d 866, 874 (S.D. Ohio 2003) (quoting

19

*Genaro v. Central Transp., Inc.*, 84 Ohio St. 3d 293, 296, 1999-Ohio-352, 703 N.E.2d 782, 785). "The federal standard is different, and under Title VII, individuals cannot be held liable." *Id.* (*Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997)).

Because of the overlap between federal and State law, the Court analyzes Plaintiff's claims under Title VII and Section 4112.02(A) together before turning to individual liability under State law.

### III.B.1. Title VII Framework

Title VII prohibits employers from taking adverse employment actions because of sex. *See* 42 U.S.C. § 2000e–2(a). This statute requires proof according to traditional principles of but-for causation. *University of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Under this standard, the law does not regard an act as a cause of an event if the particular event would have occurred without the act. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176–77 (2009) (citations omitted). Because events may have multiple but-for causes, a Title VII defendant cannot avoid liability by citing a permissible factor that contributed to the challenged employment decision. *Burrage v. United States*, 571 U.S. 204, 211–12 (2014); *Nassar*, 570 U.S. at 350. Liability depends on whether an employee's sex "actually motivated the employer's decision" and "had a determinative influence on the outcome." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

To demonstrate impermissible sex discrimination, a plaintiff may put forward direct evidence or rely instead on inferential or circumstantial evidence. In this case, Plaintiff takes the latter approach. Where a claim builds on circumstantial evidence, courts use the familiar three-step *McDonnell Douglas* burden shifting framework to

20

determine the propriety of summary judgment.  *See Hunter v. General Motors LLC*, 807 F. App'x 540, 543 (6th Cir. 2020) (citing *Peeples v. City of Detroit*, 891 F.3d 622, 633 (6th Cir. 2018)); *Gunn v. Senior Servs. of N. Ky.*, 632 F. App'x 839, 843 (6th Cir. 2015).  *First*, the plaintiff must establish a prima facie case of discrimination.  *Second*, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  *Third*, the plaintiff must demonstrate the stated justification is merely pretext.  *Gunn*, 632 F. App'x at 843.

Here, Defendants concede that Plaintiff makes out a prima facie case of sex discrimination.  (ECF No. 29, PageID #753.)  Plaintiff acknowledges that Defendants articulate a legitimate, non-discriminatory reason for terminating her employment.  (ECF No. 40, PageID #1093.)  Specifically, Defendants base Ms. Argyriou's termination on complaints from subordinates about her performance as general manager of the Salem dealership, culminating in a threatened employee walkout.  (ECF No. 29, PageID #753.)  Accordingly, adjudication of the motion for summary judgment turns on whether this proffered rationale amounts to a pretext for unlawful discrimination because of sex.

### III.B.2. Pretext

"[I]n evaluating pretext and the plaintiff's ultimate burden, the court should consider all probative evidence in the light most favorable to the plaintiff."  *Jackson v. VHS Receiving Hosp., Inc.*, 814 F.3d 769, 779 (6th Cir. 2016) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).  Still, to avoid summary judgment, a plaintiff "must produce sufficient evidence from which a jury could

reasonably reject [the employer's] explanation of why it fired her." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citations omitted).

A plaintiff can show pretext in three interrelated ways, by demonstrating that an employer's proffered reason for firing her: (1) has no basis in fact; (2) did not actually motivate the employer's actions; or (3) was insufficient to motivate the employer's actions. *Miles v. South Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020).

### III.B.2.i. Honest Belief

Under the first of these ways of showing pretext—that the employment decision has no basis in fact—the employer "benefits from the honest belief rule," as noted above in discussing Plaintiff's motion to strike. *Gordon*, 686 F. App'x at 322 (citing *Joostberns*, 166 F. App'x at 791). This rule examines whether the defendant reasonably and honestly believed its non-discriminatory reason for taking an adverse employment action. *See McLaughlin v. Fifth Third Bank, Inc.*, 772 F. App'x 300, 302–03 (6th Cir. 2019). "[T]he key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id.* (quoting *Smith*, 155 F.3d at 807) (cleaned up).

### III.B.2.i(a) Allocation of Burdens

To overcome an employer's honest belief, an employee "must allege more than a dispute over the facts upon which the discharge was based." *Id.* (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001)). Instead, a plaintiff must provide "sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment

action, thereby making its decisional process unworthy of credence, then any reliance placed by the employer in such a process cannot be said to be honestly held.'" *Id.* (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006)).  Often this takes the form of "evidence to the contrary" of the employer's honest belief, like "an error on the part of the employer that is 'too obvious to be unintentional.'" *Blizzard v. Marion Tech. College*, 698 F.3d 275, 286 (6th Cir. 2012) (quoting *Seeger*, 681 F.3d at 286).

Where an employer relies on its honest belief, "the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski*, 274 F.3d at 1117 (citing *Smith*, 155 F.3d at 806).  This means Plaintiff "cannot defeat [Defendants'] honest belief" about the walk-out "simply through her own contrary assertions[,]" or because that belief was ultimately incorrect.  *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 599 (6th Cir. 2007) (citing *Majewski*, 274 F.3d at 1117).  Whether the record contains a genuine issue of material fact about Defendants' honest belief when terminating Ms. Argyriou presents a threshold issue the Court must resolve before turning to the balance of the analysis of the parties' dispute over the issue of pretext.

### III.B.2.i(b) The Record on Defendants' Honest Belief

Defendants argue Ms. Argyriou's termination resulted from the honest belief that "employees in the Salem store were widely dissatisfied with Plaintiff" and that she had "lost the trust of her employees."  (ECF No. 43, PageID #1132.)  They maintain Mr. Flynn received "disconcerting information" about Ms. Argyriou the day before her termination, including complaints regarding her performance and

23

widespread dissatisfaction among employees in the Salem dealership to the point where they threatened a walkout. (ECF No. 43, PageID #1130–32.)

To overcome the evidence in the record supporting this belief, Plaintiff must identify a genuine issue of fact that her employer's decision was not reasonably informed and considered or that it made an error too obvious to be unintentional, if she is to survive summary judgment. On this score, the record contains a genuine dispute of material fact. Mr. Flynn testified that, had the threat of the walkout not occurred, "[h]ad that not happened, [Ms. Argyriou] would still be there." (ECF No. 28, PageID #683.) From this testimony, a reasonable jury could infer that Defendants were prepared to put up with a certain about of employee dissatisfaction, so long as it did not rise to the level of a walkout. Indeed, Mr. Flynn testified that, when he promoted Ms. Argyriou to the general manager position, he knew that she needed to make changes at the dealership that might rub some people the wrong way. (*Id.*, PageID #683–84.)

Defendants' honest belief turns on the sufficiency of their investigation, if any. *See Seeger*, 681 F.3d at 286 (noting an "optimal" investigation is not a "prerequisite to application of the honest belief rule"). In this regard, whether employees actually threatened a walkout does not matter. Accordingly, the differing testimony from Mr. Flynn and Wilkins does not bear on the analysis. Nonetheless, a reasonable jury could find Defendants' investigation lacking. Assuming Wilkins verified the account of the anonymous mechanic, no one called another mechanic. No one called a salesperson. Mr. Flynn's actions acknowledged that further investigation was

24

necessary.  He testified that he called a friend at a rival dealership to see if he had information about the mechanics, but he did not follow up and fired Ms. Argyriou without hearing back.  (ECF No. 28, PageID #683.)  Ultimately, a finder of fact may determine Defendants based the termination decision on an honest belief.  But the record also permits a reasonable jury to second guess the proffered rationale for Ms. Argyriou's termination.

For these reasons, the record presents a genuine dispute whether Defendants' investigation suffices under the law of this Circuit.  *See, e.g.*, *Shazor v. Professional Transit Mgmt., Ltd.*, 744 F.3d 948, 960–61 (6th Cir. 2014) ("One conversation did not establish sufficient particularized facts" about an employee's purported lies, and her employer "therefore failed to establish a foundation for the honest belief doctrine to apply"); *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 654 (6th Cir. 2015) (holding "a reasonable jury could find that [the employer's] belief in the reason for [the employee]'s termination was not honestly held" because it "did not investigate" a discrimination complaint and "blindly followed" a recommendation to terminate the plaintiff); *cf., e.g.*, *Jordan v. Kohl's Dep't Stores, Inc.*, 490 F. Appx' 738, 740–41 (6th Cir. 2012) (relying on one complaint when terminating an employee for dishonesty). Resolving this dispute lies within the province of the jury.

### III.B.2.ii. Evidence Beyond Pretext

"Beyond showing that the stated reason for her discharge is false, however, [a plaintiff] must also produce sufficient evidence from which the fact finder could reasonably infer that the asserted unlawful discrimination . . . was the real reason." *Bailey v. Oakwood Healthcare, Inc.*, 732 F. App'x 360, 362 (6th Cir. 2018); *Chen*, 580

F.3d at 400 (citing *Mickey v. Ziedler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008)).

When assessing pretext within the *McDonnell Douglas* framework, the Court considers "all evidence that the plaintiff has put forth—evidence from the prima facie stage, evidence discrediting the defendant's proffered reason, and any additional evidence that the plaintiff chooses to put forth." *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 810 (6th Cir. 2020) (cleaned up) (discussing the same framework in the ADEA context).  The Court turns to the evidence Plaintiff advances to carry her burden.

### III.B.2.ii(a) Termination from Both Positions

Plaintiff contrasts her performance as finance director with her treatment as general manager, suggesting that termination from *both* positions amounts to a pretext for unlawful sex discrimination.  After working for Flynn Inc. for over four years as finance director, Ms. Argyriou assumed the general manager position in mid-June 2018.  Six weeks later, she was terminated.  Based on the record, even assuming Ms. Argyriou found herself in over her head as the general manager or overwhelmed by performing her responsibilities in that position along with those as finance director at the same time, a jury could find termination from both positions pretextual.  After all, Ms. Argyriou performed well as finance director.  Indeed, that is why she was promoted in the first place.  (ECF No. 28, PageID #685.)  Just six weeks after the promotion, a jury could find her termination amounted to unlawful discrimination because Defendants did not return Ms. Argyriou to her previous role as finance director, at a time when it remained vacant, but instead fired her from both jobs.

26

### III.B.2.ii(b) Similarly Situated General Managers

Plaintiff maintains that similarly situated male general managers were given more time to improve performance at their dealerships and not terminated when confronting similar threats of a walkout.  (ECF No. 40, PageID #1099–1100.)  To survive summary judgment based on such an argument, Plaintiff must "provide evidence that similarly situated employees outside her protected class received better treatment than she did." *Kinch v. Pinnacle Foods Grp., LLC*, 758 F. App'x 473, 479 (6th Cir. 2018).  "This analysis is much [] like the comparator analysis at the prima facie stage" and "precedent from that context" helps courts analyze an argument based on similar comparisons at the pretext stage. *Miles*, 946 F.3d at 893 (discussing the ADEA).  The difference between this analysis at the prima facie and pretext stages is not which evidentiary hurdles a plaintiff must clear, but how high each hurdle is.  "The plaintiff's burden to establish a prima facie case is light, one easily met and not onerous," but at the pretext stage, a plaintiff "must demonstrate pretext and that he can meet his burden of persuasion." *Willard*, 952 F.3d at 808.

At this stage, Plaintiff must provide "evidence that other employees, particularly employees outside the protected class," were not terminated even though they "engaged in substantially identical conduct." *Miles*, 946 F.3d at 893.  She must identify individuals who "dealt with the same supervisor, [were] subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.*  Plaintiff identifies two such individuals.

*First*, Plaintiff points to Chuck Tieche.  (ECF No. 40, PageID #1100.)  He testified that, as a general manager, Mr. Flynn "always stated that everyone was going to quit, and no one ever quit." (ECF No. 36, PageID #981.)  Tieche testified that every time there was a threatened employee walkout, he "was summoned to [Mr. Flynn's] office" and "confronted with the allegations," but was always afforded the chance to tell his side of the story.  (*Id.*, PageID #986.)  And these instances did not result in Tieche's termination.

*Second*, Plaintiff identifies Don Brady, the general manager of Donnell Ford in Boardman.  (ECF No. 40, PageID #1101.)  When asked about threatened walkouts, Brady testified the threats occurred on "a lot of occasions.  I mean there really was. I know it's hard for me to say that and not be able to tell you specifics.  But again that was [Mr. Flynn's] MO." (ECF No. 34, PageID #942.)  He also remembered that "Tim Figley would come in and say, you know, you're making these changes and [Mr. Flynn] doesn't like it.  And you're—it's going to cause the employees to leave." (*Id.*)  Like Tieche, Brady testified that he received opportunities to explain himself in the face of these threats, and he was not terminated because of them either.  (*Id.*)

Construing this record in favor of the non-moving party, these comparisons create a genuine issue of material fact on the question of pretext.  As general managers, Tieche and Brady each reported to Mr. Flynn (the same supervisor) and faced threats of employee walkouts (the same conduct).  Both are outside Ms. Argyriou's protected class.  Both testified they faced threats of employee walkouts and Mr. Flynn afforded them opportunities to explain themselves and

rectify issues—an opportunity not extended to Ms. Argyriou.   Further, Brady's testimony suggests threatening general managers with employee walkouts was Mr. Flynn's "MO" when it came to influencing or controlling his general managers. (ECF No. 34, PageID #942.)  A reasonable jury could use this evidence to find that the proffered reason for terminating Ms. Argyriou was a pretext for unlawful sex discrimination, precluding summary judgment.

### III.B.2.ii(c) Additional Circumstantial Evidence

Plaintiff offers additional circumstantial evidence in the form of statements regarding the work environment at Flynn Inc. to show that the proffered reason for her termination was a pretext for sex discrimination.  "In determining the materiality of allegedly discriminatory statements, [courts] consider four factors, none of which are dispositive."  *Pelcha v. MW Bancorp., Inc.*, ___ F.3d ____, 2021 WL 650854, at *3 (6th Cir. Feb. 19, 2021) (discussing the ADEA).  Those factors include:  "(1) whether the statements were made by a decisionmaker; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination."  *Id.* (quoting *Diebel v. L & H Res., LLC*, 492 F. App'x 523, 527 (6th Cir. 2012)).  Although not asserted as direct evidence of sex discrimination, Mr. Flynn's comments can serve as indirect evidence too.  *Id.* at *4–5.

Plaintiff's additional circumstantial evidence falls into two categories.  One consists of statements attributed to Mr. Flynn, the decisionmaker at his company, regarding his views of having a female general manager.  Although not proximate in

time to Ms. Argyriou's termination, this evidence does not consist of vague or isolated remarks and may, in the judgment of a finder of fact, bear on the decision-making process at issue.  The other category involves statements indicative of the culture at Flynn Inc., including offensive and sexist comments and remarks that have no place in any workplace.  Mr. Flynn made these statements too.  While these statements are unrelated to the termination decision specifically, they are more than vague or isolated.  Weighing the materiality of Plaintiff's circumstantial evidence, and even discounting those statements removed in time from Ms. Argyriou's termination, the Court determines that a reasonable jury could disregard Mr. Flynn's denial of making any of the statements and find the proffered rationale for Ms. Argyriou's termination pretextual.  This evidence, while not overwhelming or even necessarily persuasive, amounts to more than a scintilla and falls to the jury to consider the weight it should receive.

*     *     *

In light of a plaintiff's evidentiary burden at the pretext stage, the Sixth Circuit cautions lower courts against "granting summary judgment on discrimination claims when the plaintiff has made a prima facie case *and a showing of pretext* because 'an employer's true motivations are particularly difficult to ascertain, thereby frequently making such factual determinations unsuitable for disposition at the summary judgment stage.'"  *Willard*, 952 F.3d at 810 (quoting *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 564 (6th Cir. 2004) (emphasis added)).  Based on the Court's study of the record, Plaintiff has made a sufficient showing of pretext to present her

sex discrimination claim to a jury. Whether that showing carries the day before a jury remains to be seen, but the Court cannot say that the evidence is so overwhelming or one-sided as to entitle Defendants to judgment as a matter of law.

### III.B.3. The Same-Actor Inference

Because Mr. Flynn hired Ms. Argyriou in 2014, Defendants argue that they receive the benefit of an inference that sex discrimination played no role in her termination. Courts infer that, where the person who hired a plaintiff also fires her, that person did not discriminate unlawfully in doing so. *See, e.g.*, *Garrett v. Southwest Med. Clinic*, 631 F. App'x 351, 357 (6th Cir. 2015).

Under the law of this Circuit, "the same-actor inference cannot be an independent reason to grant summary judgment where there are other disputes of material fact." *Id.* (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 573–74 (6th Cir. 2003) (en banc)). In fact, the Sixth Circuit "reject[s] the idea that a mandatory inference must be applied in favor of a summary-judgment movant whenever the claimant has been hired and fired by the same individual" as contrary to the Supreme Court's holdings on proper summary judgment practice. *Id.* at 573.

Although such an inference provides particularly compelling evidence for Defendants here, the Court may not use the inference as an independent basis to grant summary judgment. "It makes little sense for an employer to hire an employee, invest time and training, and fire the same employee for discriminatory reasons a short time later." *Williams v. Parker-Hannifin Corp.*, No. 1:16-cv-412, 2017 WL 1315682, at *1, 2017 U.S. Dist. LEXIS 54459, at *32-33 (S.D. Ohio Apr. 10, 2017), *report and recommendation adopted*, 2017 WL 3587214, 2017 U.S. Dist. LEXIS

132981 (S.D. Ohio Aug. 21, 2017).  But the same-actor inference here runs headlong into the non-discriminatory justification for Ms. Argyriou's termination and the experience of two male general managers in similar circumstances.  From those contrasting experiences, a jury could find unlawful discrimination, notwithstanding the illogic of a discriminatory firing.  In the end, Defendants' reliance on this inference "conflates the questions of *when* to apply the same actor inference and *what weight* to give the inference."  *Gaglioti v. Levin Grp., Inc.*, 508 F. App'x 476, 483 (6th Cir. 2012) (emphasis added).

### III.C. Aiding and Abetting Liability Under State Law

Plaintiff alleges that Mr. Flynn individually violated Section 4112.02(J) of the Ohio Revised Code.  This claim requires separate analysis because the Ohio statute provides for individual liability, but Title VII does not.

Section 4112.02(J) makes it "an unlawful discriminatory practice" for "any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice . . . or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice."  As this another court in this District noted, "Ohio courts have offered little guidance" on this statute.  *Sampson v. Sisters of Mercy of Willard*, No. 3:12-cv-824, 2015 WL 3953053, at *9 (N.D. Ohio June 29, 2015).

What is clear is that Section 4112.02(J) on its face applies to persons—unlike Section 4112.02(A), which applies only to employers.  *Gibbs v. Meridian Roofing Corp.*, No. 1:17-cv-245, 2017 WL 6451181, at *6 (S.D. Ohio Dec. 18, 2017); *accord Siwik v. Cleveland Clinic Found.*, No. 1:17-cv-1063, 2019 WL 1040861, at *27 (N.D.

Ohio Mar. 5, 2019) ("§ 4112.02(J) does provide for employees . . . to be held liable for aiding and abetting its employer's discriminatory or retaliatory practice."). Given the close relationship between Mr. Flynn and his company, and because he was the individual who terminated Ms. Argyriou, a reasonable jury could find on this record that Mr. Flynn violated Section 4112.02(J) and has individual liability for Ms. Argyriou's termination. Therefore, summary judgment for Mr. Flynn is not warranted on this claim either.

## CONCLUSION

On a motion for summary judgment, the Court must construe the evidence in favor of the non-movant and may not make credibility determinations or weigh evidence. On the record presented, genuine issues of material fact preclude summary judgment on Plaintiff's sex discrimination claims under federal and State law. "Pretext in this case reduces to two questions: first, which party should be believed . . . and second, which evidence is more believable[.]" *Willard*, 952 F.3d at 814. Answering those questions rests within the province of the jury, not the Court. Therefore, the Court denies summary judgment on Plaintiff's claims under Title VII and Section 4112.02(A) of the Ohio Revised Code against Flynn Inc. Similarly, the Court denies summary judgment on Plaintiff's claim under Section 4112.02(J) against Mr. Flynn.

For all the foregoing reasons, the Court **OVERRULES** Argyriou's objections (ECF No. 38) and **DENIES** her motion to strike (ECF No. 45). The Court further **GRANTS IN PART** and **DENIES IN PART** the motion for summary judgment

33

(ECF No. 29), granting the motion as to the whistleblower claim (Count 2) and denying it as to the sex discrimination claims (Count 1).

      **SO ORDERED.**

Dated:  February 26, 2021

                          J. Philip Calabrese
                          United States District Judge
                          Northern District of Ohio